Good morning. My name is Vicki Buchanan. I'm here on behalf of Shelley Lamont Small. This is the second appeal of this particular petition. Mr. Small's case was dismissed at the district court, and this court reversed and remanded because of the case of Evans v. Lamark. That was in 2005. This court remanded because it wanted to consider the matter on the merits. The government since filed another motion to dismiss when Evans v. Chavis overturned Lamark. In my briefing, I have noted that this is not possible under the rule of mandate. But that doesn't really apply here. Well, the mandate It's really the law of the case. Well, the mandate was issued in this particular case as opposed to Same case, right? Same case? This is the same case. It is. It is the same case. But the mandate of this court dismissed Well, we just told the district court what to do to conduct an evidentiary hearing. I mean, to breach the merits, so they did. But it's still the same case. It's the same case, but as I read the Thrasher case, it says that the rule of mandate applies once the mandate is issued because you can't keep going back and re-issuing All the mandate does is tell the district court what they have to do. But the jurisdiction changes at that point. And at the time it came back, the law had not yet changed when they answered. The real way I think you look at this case is it's the law of the case doctrine, which is subject to some discretionary review on our part. We could apply it, we could not apply it. Basically, you're arguing we should not go back and re-look at that jurisdictional ruling because it's unfair. And, well, basically, it is. And the district court in any event did rule that it was equitably told, so that the issue is kind of more or less moot, except for the government's raising the issue by in their 20HA letter, in which they refer to the United States versus bad divorce. And that case is somewhat different because in that case, before the mandate actually issued, the law changed on sentencing. The decision came down at the end of December. The Booker case came out on the 12th of January. So it wasn't the case where it had been finalized in the mandate. Regardless, I think it's important to get to the merits of this particular case, and the merits of this case really revolve around ineffective assistance of counsel. There was, in this case, very paltry limited evidence that Mr. Small was the person who killed Mr. Olivares. The main Mr. Olivares was shot in his bed through an open window, and the only fingerprint outside the window was not Mr. Small's. The only other evidence was a male woman said that she, that Mr. Small lived in the house where the gun was found under the bed. But Mr. Small looks exactly like his brother Jerome. His girlfriend's got him mixed up. So there was very little evidence that he had anything whatsoever to do with the gun. So the question comes down to ineffective assistance of trial counsel. Did trial counsel even bother to interview any of the people who lived in the house? Did trial counsel bother to interview anyone that, his mother, who sat in trial every single day, as to whether, where Mr. Small lived? There were no belongings in the house. What would these people say if he had interviewed them? What would we know today? According to him, he would have said that he did not live in the house, that the gun belonged to another person. There were two witnesses that said that the gun came from someone else. His sister would have said that the person who slept in the bed the night before was some guy she had met on the, you know, had just recently met. So there were all kinds of things to say that Small had nothing whatsoever to do with that particular gun that was found, which was, in fact, the murder weapon. Now, none of these individuals produced any declarations, correct? No. No, they did not produce any declarations, so we don't know. That's the – that would be the important reason we would have an evidentiary hearing, which gets to the question of whether or not Mr. Small. Do you think the district court should have been apprised of that before making a decision whether or not – before being asked to make a decision whether or not to hold an evidentiary hearing? As to trial counsel, no. I think Mr. Small put those – those instances in his paperwork before the district court. He referred to people by specific name, and he talked about what specifically they would be talking – what they would be saying in the case if they were called to testify. He also made it quite clear in his sentencing that he was – that his counsel had not called the people he had wanted them to call to at least rebut the testimony of the other people. In fact, as it comes to the case where Mr. Small has already served his sentence, his seven-year sentence for assault with a deadly weapon, there were witnesses that he put in his traverse that would have talked about that as well. The people who were holding the party where the incident occurred, according to Mr. Small, would have testified that there was no weapon involved and would have given the circumstances that surrounded that particular issue as well. So I think that it's – the really crux of the issue is whether or not he had effective counsel in the trial level. And I think he preserved the issue. That's another issue before this Court. He preserved it. If you go through his entire pleadings all the way through the district court and you strike out the name – strike out appellate counsel, he very clearly laid out a case for ineffective counsel. Do you think he was raising a claim of ineffective assistance of appellate counsel? I think he did that because he doesn't – he didn't know. No, that's not my question. Do you think he was raising a claim of ineffective assistance of appellate counsel? Yes. But I think he also was raising – but his primary reason for raising the claim  do that. And the reason for that claim was based on ineffective assistance of trial counsel. Okay. I'll reserve the balance of my time. Thank you. Good morning, Your Honors. Supervising Deputy Attorney General Scott Tarl for the Respondent. Just very briefly, first of all, the case we cited in our Rule 28J letter was United States v. Bad Marriage, not Bad Divorce. Okay. Well... Slip of the tongue. I would like to respond to a few things that appellant's counsel mentioned. First of all, appellant's counsel characterized the evidence against her client as paltry, and I would beg to differ with that characterization. The murder occurred in a very unique way. A person shot the victim through his bedroom window, through the curtain. Three weeks before that, Mr. Small, who had a motive to kill him because the victim, excuse me, had helped his battered girlfriend – or helped Mr. Small's battered former girlfriend escape from Mr. Small – three weeks before the murder, he rehearsed it. He went up to that same window and aimed a gun and told the bystander that he has a grudge against the victim because he was harboring his girl. And even more shortly before the murder, he told the bystander that all he would have to do if he wanted to kill him was walk up to that bedroom window and shoot a gun. And that is exactly how the murder happened in this case. Then the gun, which was the same one that his own aunt, or a woman who had been considered herself his aunt, had seen him hit her with. The same gun was found under the bed of his next girlfriend, where abundant evidence was presented that he had been staying. There's been no dispute. Was there evidence that that was exactly the same gun, or not just that it looked like it? It looked like the same gun, or it was a similar gun? The gun found under the bed was the one used to shoot the victim, or that it was the one that – Both. Both. Okay. That it was used to shoot the victim, yes, there was ballistics. That's right. That tied it to that. But was there proof? Go ahead. That it was the gun that Mr. Small had hit the aunt with. Stuck in her ear? Well, her identification of it from a photograph. And it was a small – I believe it was a 22 millimeter. But regardless, that coupled with the facts of the gun being found under his girlfriend's bed, the fact that as soon as the gun was found, he mysteriously disappeared to Alabama, which is where the new girlfriend's family lived, that he threatened the new girlfriend on the phone not to tell anything about – and also had instructed her to lie about the bullets in that gun. Why would he say something like that if he wasn't tied to the gun? Was it a 22 millimeter? 22 caliber. Caliber. You know, I'm not good – You didn't say millimeter. You said millimeter, but you misspoke. I think it's 22 caliber. I apologize. I'm not particularly good on firearms. But other things I would like to say – Look at the difference. 22 is like this. 20 millimeters. Not that big. Significant difference. Significant difference. I apologize for misspeaking about that. I would also like to address a few other points. Let me ask you this. The magistrate judge found that the smallest petition was timely. The magistrate judge relied on equitable tolling ultimately. And it relied on the fact that there was a prison lockdown. We had only the vaguest of allegations about that prison lockdown that were never really developed. When it started, when it stopped. How did it interfere with his ability to file petitions? Well, did the state object to that finding? Or had an opportunity to do so? I would have to – I don't recall, Your Honor, how that came about. I believe that there was a report and recommendation. There was a motion to dismiss filed by us. I believe we filed a reply. I would need to check the record again. I believe we filed a reply to their opposition to that motion. Then a report and recommendation came out in our favor. And I don't know whether we objected because it was in our favor. He's looking for an evidentiary hearing, right? Appellants? Yes. Yeah, that's what they want. And what's the proper procedure? I believe, Your Honors, it would be premature at this point. First of all – What did you say? I believe it would be very premature at this point to remand specifically for an evidentiary hearing. On the merits? On the merits of – well, first of all, there was a ruling on the merits of the IAC claim if you consider it to be an ineffective assistance of appellate counsel claim. If the way this Court were going were to interpret it to mean an ineffective assistance of trial counsel claim, that had never been addressed on the merits. The district court did not interpret the claim to be as such. And there are many ineffective assistance of trial counsel claims made by petitioners, and not all of them get evidentiary hearings. There are a lot of procedures that first of all have to be done in answer on the merits. And I'd point out in this particular case, as Your Honor noted, not a single declaration has ever been presented from any of these witnesses, even though one of them is the defendant's mother and one of them is one of his girlfriends and a brother. But as to Judge – I'm sorry. I may have misunderstood Judge Pegerson's question. But as to his question, an evidentiary hearing on the jurisdictional issue. On the issue of equitable tolling. Equitable tolling. We only get there if we decide to take another look at the timeliness issue, correct? If – if you were to disagree with the district court's ruling on the timeliness issue, then potentially, but again – No, we already said once before, right, in the first memorandum disposition? Yes. That the petition was timely. He said it was timely, right? Now, she got up here and argued the law mandate means we can't go back and look at it. But I don't know that that's correct. It seems like it's the law of the case, Doctor, and we have discretion to decide whether or not we want to take a look at it. But why would we want to take a look at it? It was heavily litigated. There was no objection made, as Judge Pegerson pointed out. Why don't we just stick with it? Because – A brand new case had decided by the U.S. Supreme Court that undermined what the basis was for this court's prior memorandum decision, which was the Evans v. Chavez decision, that this court's prior decision relied on then existing good case law, that a California Supreme Court silent denial of a habeas petition is not a merits denial for purposes – or, excuse me, is a merits denial and does not indicate that the petition was not properly filed. And that assumption was foreclosed by the Supreme Court's Evans v. Chavez decision. And that would be a reason to revisit the timeliness issue. But if we revisit, like Judge Pegerson says, he wants a hearing on the equitable tolling issue. Well, there could be more development of the record. Are you wanting a hearing on the equitable tolling issue? Well, I would rather have a hearing on the equitable tolling issue than the petition being construed to present a brand new claim of ineffective assistance that it didn't really present. But that's the heart of his claim now, though. I mean, what's the heart of his claim? Ineffective assistance to counsel. Yes. And it's almost like we're playing games. Well, ineffective assistance of appellate counsel. So the trial counsel was all right. Then it was the appellate counsel. No, really not. I mean, you understand the heart of his claim. It seems like just inartfully stated is, my trial counsel fouled up. Well, ineffective assistance of trial counsel, if we were to construe the petition to actually say that, first of all, we would have trouble applying the AEDPA deference standard because it's entirely possible that the California Supreme Court considered the claim to be ineffective assistance of appellate counsel. And that's one reason we would have difficulty with that. But another thing is that the petition gave us... What did the California Supreme Court do? Denied it with a silent denial. With a postcard. Yes. Yeah. So, you see, that's the whole problem with the... The AEDPA. You know, habeas corpus, I was on the federal court for a short time when I came to the conclusion that the great writ was the great joke. And it... I mean, what's the problem with giving them a hearing? It doesn't take long. It takes a lot less time than all these appeals. An evidentiary hearing. Yeah. Your Honor, I've been involved in several evidentiary hearings at the district court level. They take an enormous amount of time and resources. Well, maybe if the state courts took a little more time, we wouldn't... Do you know how many state habeas petitions the district court in Los Angeles gets every year? Do you have any idea? Probably similar to the number that we get every year, which is in the thousands. In the thousands. And you know how many writs are actually granted? I would not know that off the top of my head, Your Honor. Maybe one or two. And most of that work is paused because the state court judges don't do their jobs. And then the Supreme Court issues postcards and then they come to us. And it just creates a huge burden for the system. But it's good for employment. Because when I started on the district court in 67, there were no magistrates. But then things started to pile up and pile up and pile up. And Judge Ferguson and Judge Hill pushed for the creation of a magistrate system. And now we have probably more magistrates than we have district judges. We only had 13 judges when I was there. I think now they're in their 30s. And it's all really thanks to the state. Because you've created all this work and full employment. And a lot of people are happy and get good jobs. And it's because you don't do what you're supposed to do. That's the way it is. Your Honor, I don't know if I would put it on the state. Oh, I'd put it on the state. If I could make just a couple of points here. Put Jerry Brown on the phone. I'll put it right on him. If I could make just one or two more points really quickly. Give him my best. I'll try to do so if my call goes through. You said one or two points? Yes. First of all, if we were to construe the petition itself, the state of claim of ineffective assistance of trial counsel, the petition gave us nothing to answer. And that was a real problem. All the petition really said about this failure to investigate, gate and call alibi witnesses. There was. There were many alibi witnesses and I told my lawyer about them and they were never called. If I were to attempt to answer that, I would have to try to guess what witnesses in the world he might be talking about and then try to argue why it was reasonable potentially not to call. And it gave us just nothing to answer. It was in the traverse that for the first time in federal court, he gave us a little bit more detail and identified these three people. None of them, by the way, is the sister that appellant's counsel is talking about right now, but gave us those three people that I was able to address on the merits in this court, or not on the merits, but I was able to allude to in my briefing in this court somewhat. So that sparsity of briefing in federal court only adds to the impression that what appellant was trying to do, for whatever reason, was simply raise a claim of ineffective assistance of appellate counsel, and I, not being his lawyer, wasn't going to rewrite his claim for him. Kennedy. Who refreshed my memory. Who represented him at the trial court? Gershengorn. At the trial court? The name of the attorney I don't recall.  Well, was it private counsel? Gershengorn. Oh, I believe. Kennedy.  Gershengorn. I don't believe it was a public defender. Kennedy. It was not a public defender. Gershengorn. I don't believe so. Kennedy. Yeah. Gershengorn. I could be wrong about that. Kennedy. I think you're right. Gershengorn. I believe it wouldn't have been retained. It probably would have been appointed. Kennedy. No, I don't. It wasn't a public defender. Gershengorn. Unless the Court has any further questions, I'll submit. Kennedy.
judges: Mahan, Pregerson, Paez